## THE I. L. I. NO. 103.

## BUNGE NORTH AMERICAN GRAIN CORPORATION v. O'DONNELL TRANSP. CO., Inc.

### Nos. 353, 354.

Circuit Court of Appeals, Second Circuit.
June 12, 1939.

Macklin, Brown, Lenahan & Speer, and Leo F. Hanan, all of New York City (Richard F. Lenahan, of New York City, of counsel), for O'Donnell Transp. Co.

Bigham, Englar, Jones & Houston, of New York City (Leonard J. Matteson and Richard F. Shaw, both of New York City, of counsel), for libelant-appellee Bunge North American Grain Corporation.

Barry, Wainwright, Thacher & Symmers, and Earle Farwell, all of New York City, for claimant-appellee The I. L. I. No. 103.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

PER CURIAM.

This appeal involves only questions of fact, to whose discussion we shall therefore confine ourselves. As to the motorship, "I. L. I. No. 103", we see no reason to disturb the finding below; the issue depended upon the testimony of witnesses, who appeared before the district judge, and we are less able than he to decide where the truth lay between them. We therefore affirm the decree, so far as it dismissed the suits against that vessel and its owner.

As to the O'Donnell Transportation Company, however, we think that the indisputable evidence makes it almost certain that the barge was impaled upon an unknown rock in the channel. This rock was some two feet thick and three feet square, and lay about ten feet inside the channel line and just off the buoy. Farther out were some water-logged logs, but them we may disregard. Ten and a half feet of water were over the top of the rock, and the barge would have cleared it, for she drew only nine feet six inches forward and ten feet aft. She was 113 feet over all, and had a beam of 32 feet; her bow was moulded forward for about 13 or 15 feet, so that along the bottom she measured only 98 to 100 feet. The first break was 12 or 14 feet from the forward end of the bottom, and 16 or 18 feet from the starboard side; it did not go quite through the planks, but a second one, a short distance aft, was a complete puncture, and from there to the stern the planks were gouged. Such injuries could not be caused by the barge's striking a rock outside the channel; for if she had nosed into the bank, the forward end of the bottom would have been the first to strike; only in case she was lifted and then fell a distance of a few inches—not necessarily the full six—could the first break have been where it was. Again, the second and severer break could not have been separated from the first as it was by uninjured planking. On the other hand, these injuries are perfectly accounted for, if the "I. L. I. No. 103" in passing, even though at a reasonable speed, lifted and lowered the barge by her displacement. It is not necessary to suppose that the rock was full ten and a half feet below the surface when the barge first struck, for it could have been driven down a matter of several inches by the two blows of the barge and its later passage over it.

We do not forget that the testimony of the crew of the "I. L. I. No. 103" is that she was too far astern to raise and lower the barge by her displacement, when she saw her heel as she struck what the "I. L. I. No. 103's" log described as "the bank". But that vessel was probably aware that she had had something to do with the accident, and would be prone to put the best face possible upon the occurrence. We are justified in believing that she had come far enough alongside to change the barge's level, just as the O'Donnell witnesses testified. The displacement of the buoy is also accounted for without supposing that the barge went ashore on the bank. It was found about fifteen feet outside the edge of the channel, and the rock was ten feet inside. The injury being 16 to 18 feet from the starboard side of the barge, the starboard side was therefore six to eight feet outside the channel. That does indeed explain why the buoy was displaced some seven to nine feet beyond the starboard side of the barge, but we can suppose that, when she overran it, she struck it with the bluff of her bow, and threw it off to starboard. That it might have been forced a seven feet or so beyond her side is entirely possible. The foregoing is of course not a demonstration, but it satisfies the facts better than the alternative. Moreover, while it is conceivable of course that there was another rock outside the channel at the same depth as that discovered

652

in the channel, nobody found one, and its existence is purely speculative. The district judge supposed that the rock actually found had been "carried back" into the channel by the barge, held fast, we suppose, in the hole it had made. That seems to us too remote a possibility to be the basis of a judgment, and besides, it answers none of the difficulties.

While, therefore, the O'Donnell tug did take the barge outside the channel and was at fault for doing so, she is not liable, for the injury did not result from that fault. She was entitled to hug the right side—indeed that was her duty—and if she had got within ten feet of the edge, and the "I. L. I. No. 103" had passed as she did, the same injury would have happened.

Decree in O'Donnell v. Motorship "I. L. I. No. 103" affirmed.

Decree in Bunge v. O'Donnell reversed and libel dismissed.